UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SEAN MAHONEY and AYRES STOCKLY, ) <br> on behalf of themselves and all others similarly ) <br> situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> VOLKSWAGEN GROUP OF AMERICA, ) <br> INC., ) <br> ) <br> Defendant. | Civil No. _____ |

## CLASS ACTION COMPLAINT

Plaintiffs Sean Mahoney and Ayres Stockly ("Plaintiffs"), individually and on behalf of all Maine residents similarly situated (the "Class"), bring this Class Action against defendant Volkswagen Group of America, Inc. ("Volkswagen") for common law fraud, breach of warranty, breach of implied warranty, and other violations of federal and Maine law. Volkswagen intentionally designed, made, marketed, and sold a variety of "CleanDiesel" vehicles (hereinafter the "Defeat-Device Vehicles") secretly equipped with software that turned on the cars' full pollution controls only when the car was undergoing emissions testing. Despite touting itself and its cars as "clean" and "green," Volkswagen sold thousands of cars to Maine citizens that produced emissions up to 40 times the allowable levels and artificially and deceptively maintained fuel efficiency and performance levels that the owners had come to trust. Maine residents now find themselves driving cars that pollute ferociously, that violate State and federal law, that are worth substantially less than they bargained, and that cannot be fixed without depriving the owners of the features they came to expect.

The plaintiffs allege the following:

## PARTIES

1. Plaintiff Sean Mahoney is an individual residing in Falmouth, Maine.

2. Plaintiff Ayres Stockly is an individual residing in Cumberland, Maine.

3. Volkswagen is a corporation organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen designs, manufactures, markets, distributes, and warrants cars in the United States under the Volkswagen and Audi brands, and sells such cars in Maine.

## JURISDICTION

4. This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed class consists of 100 or more members of which at least one member is a citizen of a State different from Volkswagen and the matter in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Volkswagen because it regularly conducts business in Maine, has sufficient minimum contacts with Maine, and intentionally avails itself of the consumer markets within Maine through the promotion, marketing, and distribution of its vehicles in Maine.

## VENUE

6. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. The Plaintiffs reside in this District and use their Defeat-Device Vehicles in this District.

## FACTUAL BACKGROUND

### *Maine Public Policy and Regulatory Framework*

7. In 1975, the Maine Legislature announced the State's policy with respect to motor vehicles distributed or sold to residents of the State of Maine:

> The Legislature finds that the manufacture, distribution and sale of motor vehicles in the State vitally affects the general economy of the State and the public interest and public welfare; that the manufacturers of motor vehicles whose physical manufacturing facilities are not located within the State and distributors are doing business in the State through their control over and relationship and transactions with their dealers in the State; that the geographical location of the State makes it necessary to ensure the availability of motor vehicles and parts and dependable service for motor vehicles throughout the State to protect and preserve the transportation system, the public safety and welfare and the investments of its residents. The Legislature declares, on the basis of these findings, that it is necessary to regulate and to license motor vehicle manufacturers and distributors and their branches and representatives, motor vehicle dealers and any other person engaged in the business of selling or purchasing vehicles in the State *in order to prevent frauds, impositions and other abuses against residents and to protect and preserve the economy, the investments of residents, the public safety and the transportation system of the State.*

10 M.R.S.A. § 1182 (emphasis added). Pursuant to this statement and other Maine statutes, Maine has promulgated comprehensive regulations concerning the sale and distribution of automobiles in the state of Maine. *See, e.g.*, 10 M.R.S.A. § 1174 ("It shall be unlawful for any . . . [m]anufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer to engage in any action which is arbitrary, in bad faith or unconscionable and which causes damage to any of said parties or to the public").

8. Consistent with the Legislature's statement of public policy, the Maine Department of Environmental Protection (DEP) has also implemented a comprehensive set of environmental regulations governing motor vehicles to protect Maine residents. For example:

> **New Vehicle Emission Requirements.** No person, including a manufacturer or dealer, shall deliver for sale or lease, offer for sale or lease, sell or lease, import, or rent a new vehicle that is a 2001 and subsequent model-year passenger car or light-duty truck or 2003 and subsequent model-year medium-duty vehicle, unless the vehicle or engine is California-certified and complies with the following criteria: (1)The exhaust emissions standards in Title 13, California Code of Regulations Sections 1956.8 (c),(g) or (h), 1960.1, 19611961.1, 1961.2, 1961.3, 1962, 1962.1 or 1962.2; and (2) The emission control label requirements, the smog index label requirements for 2002 through 2009 model-years, and the "Environmental Performance Label" or a "Federal Fuel Economy and Environmental Label" securely affixed to a window of the vehicle for 2010 and subsequent model-years in accordance with Title 13, California Code of Regulations Section 1965. No motor vehicle dealer in Maine shall remove or cause removal of an "Environmental Performance Label" or a "Federal Fuel Economy and Environmental Label" affixed to any motor vehicle subject prior to the sale or lease of the vehicle.

06-096 C.M.R. ch. 129 §4(A)

9. Significantly, the Maine DEP's regulations require that every motor vehicle manufacturer operating in Maine "provide a warranty for the ultimate purchaser and each subsequent purchaser that complies with the requirements of Title 13, *California Code of Regulations*, Sections 2035 through 2040 and 2046." *Id.* at §5.

10. These Maine regulations not only ensure the environmental and emissions performance of vehicles operating in the state of Maine, but help prevent fraud or deception in the marketing and sale of motor vehicles to Maine consumers.

11. Maine's automotive environmental regulations operate in tandem with the federal Clean Air Act and a comprehensive set of federal regulations. The Clean Air Act requires *inter alia* that vehicle manufacturers certify to the Environmental Protection Agency ("EPA") that

vehicles sold in the United States meet applicable federal emissions standards to control air pollution.

### *Volkswagen's CleanDiesel Technology and the CleanDiesel Price Premium*

12. Diesel engines operate by compressing a diesel-air mixture in the engine's cylinders to a very high pressure, sufficient to precipitate combustion. One of the byproducts of this compression and combustion process is Nitrogen Oxide ("NOx").

13. NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with preexisting respiratory illness are at acute risk of health effects from these pollutants.

14. Beginning in 2009, Volkswagen began selling various model cars employing – and prominently advertizing – "CleanDiesel" technology throughout the U.S. Among other things, Volkswagen claimed that its CleanDiesel technology reduced NOx emissions while preserving the engine's fuel efficiency and performance/power standards. Volkswagen stated that its CleanDiesel cars were "50-state emissions compliant" and had "high fuel efficiency and performance with low emissions." Emphasizing the fact that the technology preserved performance, Volkswagen ran a series of ads stating: "Fun Fueled" and "This Ain't Your Daddy's Diesel." Volkswagen publicly stated that its CleanDiesel technology "truly offer[s] a no compromise alternative fuel driving experience that provides our customer the best of both worlds—excellent fuel efficiency combined with a dynamic driving experience." Volkswagen advertised the CleanDiesel technology in Maine.

15. Volkswagen established a higher manufacturer's suggested retail price ("MSRP") for vehicles employing CleanDiesel technology. For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780 while the base TDI S CleanDiesel had a starting MSRP of $21,640. The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL has a starting MSRP of $26,410.

16. Volkswagen's CleanDiesel vehicles did, in fact, command a higher price in the market as a result of the advertised technology. Furthermore, a price premium persisted in downstream third-party sales, including private sales in the used car market in Maine.

### *The Plaintiffs' Vehicles*

17. In 2014, Plaintiff Sean Mahoney purchased his 2011 Volkswagen Jetta Sportswagen TDI from Prime Motor Group in Saco, Maine, a certified Volkswagen dealer. Mahoney still owns and uses his vehicle.

18. In 2013, Plaintiff Ayres Stockly purchased a new 2013 Passat TDi from Morong Falmouth, a certified Volkswagen dealer. Stockly still owns and uses his vehicle.

19. Each of the plaintiffs believed – and relied upon the belief – that their cars' CleanDiesel technology would operate properly and as advertised.

20. Each of the plaintiffs believed – and relied upon the belief – that their cars' would comply with State and federal emissions regulations, *i.e*. that the cars would be legal to drive.

### *Volkswagen's Admission of Fraudulent "Defeat Device" Software*

21. On September 18, 2015, the EPA issued a Notice of Violation ("NOV") accusing Volkswagen of purposeful and intentionally violating the laws of the United States and EPA regulations by selling vehicles that purposefully evaded emissions requirements established pursuant to Part A of Title II of the Clean Air Act, 42 U.S.C. §§ 7521-7554.

22. According to the NOV and subsequent news reports, Volkswagen installed software in roughly 482,000 diesel passenger cars sold in the U.S. since 2008 that turned on the cars' full emissions control systems during emissions testing but turned the systems off during normal driving. The Volkswagen Jetta, Beetle, Audi A3 and Golf from the 2009-2015 model years, as well as the Passat from the 2014-2015 model years, with 2-Liter, four-cylinder Type EA 189 diesel engines, employed this software "defeat device." The Defeat-Device Vehicles thus appeared to meet emissions standards at state testing stations during testing, but emitted NOx at rates up to 40 times the allowed limits during normal operation.

23. Volkswagen has since admitted this deception to the public. In a statement on September 20, 2015, Volkswagen AG's Chief Executive Officer Martin Winterkorn said the company was "deeply sorry that we have broken the trust of our customers and the public." Regarding the allegations by the EPA, a spokesperson for Volkswagen stated: "We have admitted it to the regulator. It is true. We are actively cooperating with the regulator." Volkswagen also announced that it was halting sales of all 2.0L TDI engine vehicles in the United States. Michael Horn, the president and CEO of Volkswagen Group of America, said the company had "totally screwed up." The Company's CEO has since resigned.

24. As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat-Device Vehicles emit 40 times the allowed levels, owners and/or lessees of the Defeat-Device Vehicles have suffered losses in money and/or property. The cars have become less valuable in light of Volkswagen's admissions. Plaintiffs have or will incur out-of-pocket losses, future attempted repairs, and diminished value of their vehicles.

25.     Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Defeat-Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

26.     Volkswagen has been ordered by the EPA to recall the Defeat-Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. Until the recall occurs, the Class will suffer harm in the form of *inter alia* reduced car value and ongoing distress over emissions.

27.     Upon information and belief, Volkswagen will not be able to make the Defeat-Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including horsepower and fuel efficiency.

28.     As a result, even if Volkswagen were able to make the Class members' Defeat-Device Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. This will further result in a diminution in value of every Defeat-Device Vehicle.

## CLASS ALLEGATIONS

29.     Plaintiffs bring this action individually and on behalf of all Maine residents that owned or leased a Volkswagen Defeat-Device Vehicle as of the date of public notice, *i.e.* the NOV (Sept. 18, 2015) pursuant to Fed.R.Civ.P. 23(a), (b)(2), and (b)(3). Plaintiffs seek damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the defeat device as alleged in this complaint.

30.     30.     The Defeat-Device Vehicles include, without limitation the following diesel Model Year ("MY") vehicles: Jetta (MY 2009 – 2015); Jetta Sportwagen (MY 2009-

2014); Beetle (MY 2012 – 2015); Beetle Convertible (MY 2012-2015); Audi A3 (MY 2010 – 2015); Golf (MY 2010 – 2015); Golf Sportwagen (MY 2015); Passat (MY 2012-2015). Excluded from the Class are individuals who have personal injury claims resulting from the defeat device in the CleanDiesel system.  Also excluded are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.  Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

31.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

32.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Fed.R.Civ.P. 23.  To wit:

33.     <u>Numerosity</u>.  Fed.R.Civ.P. 23(a)(1): The members of the Class are so numerous that individual joinder of all Class members is impracticable.  We estimate the number to be well in excess of 1,000 members.  The precise number may be ascertained from Volkswagen's books and records and/or the Maine Registry of Motor Vehicles.  Class members may be notified of the pendency of this action by well-established notice dissemination methods.

34.     <u>Commonality and Predominance</u>: Fed.R.Civ.P. 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

        a)     Whether Volkswagen engaged in the conduct alleged herein;

b) Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat-Device Vehicles into the stream of commerce in Maine;

c) Whether the CleanDiesel engine system in the Defeat-Device Vehicles fails to comply with Maine DEP requirements and/or U.S. EPA requirements;

d) Whether the CleanDiesel engine systems in Defeat-Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat-Device Vehicles;

e) Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

f) Whether Volkswagen designed, manufactured, marketed, and distributed Defeat-Device Vehicles with a "defeat device";

g) Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h) Whether Plaintiff and the other Class members overpaid for their Defeat-Device Vehicles;

i) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j) Whether Plaintiff and the other Class members are entitled to payment of actual, incidental, consequential, exemplary, punitive, and/or statutory damages under Maine and/or U.S. law.

35. <u>Typicality</u>: Fed.R.Civ.P. 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members reside in Maine, enjoy the policies, laws, and protections of Maine, and were comparably injured through Volkswagen's wrongful conduct as described above.

36. <u>Adequacy</u>: Fed.R.Civ.P. 23(a)(4): Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the other members of the Class they seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation, operating from the largest firm in Maine; and Plaintiff intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by the Plaintiffs and their counsel.

37. <u>Declaratory and Injunctive Relief</u>: Fed.R.Civ.P. 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to the Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the class as a whole.

38. <u>Superiority</u>: Fed.R.Civ.P. 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other harms suffered by the Plaintiffs are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for Class members to individually seek redress for Volkswagen's wrongful conduct.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class

action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (11 M.R.S.A. § 2-314)

39. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

40. Plaintiffs bring this Count on behalf of the Class.

41. Volkswagen is and was at all relevant times a seller with respect to motor vehicles under 11 M.R.S.A. § 2-314.

42. A warranty that the Defeat-Device Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to 11 M.R.S.A. § 2-314, including that the Defeat-Device Vehicles were fit for the ordinary purposes for which they are used and conform to the promises of face made on the Defeat-Device Vehicles' labels.

43. These Defeat-Device Vehicles, when sold and at all times thereafter, were not in merchantable condition. Specifically, the Defeat-Device Vehicles do not comply with federal or Maine emissions standards and do not conform to promises made by Volkswagen on labels and in other publications regarding emissions, fuel efficiency, performance and value.

44. Any applicable statute of limitations was tolled until September 18, 2015, the date upon which the EPA issued the NOV, by virtue of Volkswagen's intentional concealment of the defeat devices and its misrepresentations regarding the Defeat-Device Vehicles' emissions, fuel efficiency and performance. Plaintiffs and the other Class members could not have discovered Volkswagen's breach of warranty, or its concealment and misrepresentations, through the exercise of reasonable diligence.

45. As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiffs and the Class members have been damaged in an amount to be proven at trial.

## COUNT II
## BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY
## (11 M.R.S.A. § 2-313)

46. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

47. Plaintiffs bring this Count on behalf of the Class.

48. Volkswagen is and was at all relevant times a seller with respect to motor vehicles under 11 M.R.S.A. § 2-313.

49. Volkswagen made numerous affirmations of fact and promises regarding the emissions, fuel efficiency, performance and value of the Defeat-Device Vehicles. These affirmations of fact and promises were made in warranties that accompanied the Defeat-Device Vehicles, in publications and in advertisements.

50. The Defeat-Device Vehicles failed to conform to those affirmations of facts and promises by, among other things, including the "defeat devices" thereby emitting far more pollutants, including NOx, than stated.

51. These affirmations of fact and promises were a basis of the bargain between Plaintiffs and the other Class members, on the one hand, and Volkswagen, on the other hand, because the Plaintiffs and other Class members would not have purchased or leased the Defeat-Device Vehicles had they known that Volkswagen was in breach of the express warranties, that the Defeat-Device Vehicles did not meet federal and state emissions standards and that meeting such standards and the terms of the express warranties made by Volkswagen would affect the Defeat-Device Vehicles performance, fuel efficiency and value.

52. Any applicable statute of limitations was tolled until September 18, 2015, the date upon which the EPA issued the NOV, by virtue of Volkswagen's intentional concealment of the defeat devices and its misrepresentations regarding the Defeat-Device Vehicles' emissions, fuel efficiency and performance. Plaintiffs and the other Class members could not have discovered Volkswagen's breach of warranty, or its concealment and misrepresentations, through the exercise of reasonable diligence.

53. As a direct and proximate result of Volkswagen's breach of such express warranties, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT III
## VIOLATION OF MAINE UNIFORM DECEPTIVE TRADE PRACICES ACT
## (10 M.R.S.A. §§ 1211, *et seq.*)

54. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

55. Plaintiffs bring this Count on behalf of the Maine Class.

56. Maine's Uniform Deceptive Trade Practices Act ("UDTPA"), 10 M.R.S.A. §§ 1211, *et seq.*, prohibits deceptive acts or practices in the course of business.

57. Volkswagen's conduct, as described herein, was and is in violation of the UDTPA by, among other things:

    a) Representing that goods or services have characteristics, uses, benefits or qualities that they do not have, 10 M.R.S.A. § 1212(1)(E);

    b) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another, 10 M.R.S.A. § 1212(1)(G);

      c)      Advertised goods or services with intent not to sell them as advertised, 10 M.R.S.A. § 1212(1)(I); and

      d)      Engaging in any other conduct which creates a likelihood of confusion or misunderstanding, 10 M.R.S.A. § 1212(1)(L).

58. Plaintiffs and the other members of the Class have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Defeat-Device Vehicles and because they stand to pay additional fuel costs if and when their Defeat-Device Vehicles are made to comply with emissions standards.

59. Any applicable statute of limitations was tolled until September 18, 2015, the date upon which the EPA issued the NOV, by virtue of Volkswagen's intentional concealment of the defeat devices and its misrepresentations regarding emissions, fuel efficiency and performance. Plaintiffs and the other Class members could not have discovered Volkswagen's deceptive trade practices, or its concealment and misrepresentations, through the exercise of reasonable diligence.

60. Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under 10 M.R.S.A. § 1213 and in the form of recall or free replacement program. Plaintiff also seeks an award of attorney's fees pursuant to 10 M.R.S.A. § 1213.

## COUNT IV
## FRAUDULENT CONCEALMENT

61. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

62. This claim is brought on behalf of the Class.

63. Volkswagen intentionally concealed and suppressed material facts concerning the emissions, fuel economy, performance and value of the Defeat-Device Vehicles. Specifically,

15

Volkswagen represented that the Defeat-Device Vehicles were "green," "clean," and "environmentally-friendly." Volkswagen represented that the Defeat-Device Vehicles were "50-state emissions compliant" and had "high fuel efficiency and performance with low emissions." In fact, the Defeat-Device Vehicles contained "defeat devices" which insured that they were not emissions compliant, let alone "green," "clean" or "environmentally friendly."

64.     The facts concealed by Volkswagen were material in that they directly affected the Defeat-Device Vehicles' compliance with federal and Maine law, as well as their performance and value. Plaintiffs and the other Class members had no way of knowing the facts concealed by Volkswagen because Volkswagen intentionally concealed those facts through the use of the "defeat devices," which relied on sophisticated software to turn on the cars' full emissions control systems at the one time Plaintiffs and the Class members could have discovered issues with their cars' emissions systems – when the cars were being tested.

65.     Volkswagen had a duty to disclose the truth about the Defeat-Device Vehicles' emissions, fuel efficiency, performance and value because these facts were known exclusively to Volkswagen. Moreover, having publicly stated that the Defeat-Device Vehicles were "clean" diesel and that they had low emissions, Volkswagen had a duty to ensure the accuracy of those statements.

66.     Volkswagen's fraudulent concealment was specifically designed to induce Plaintiffs' reliance. Indeed, Volkswagen's public statements in advertisements and otherwise, were intended to attract purchasers for whom value, fuel efficiency, performance *and environmental safety* was important. Indeed, Volkswagen has admitted that it "broke[] the trust of [its] customers and the public."

67. Plaintiffs and the other Class members relied on Volkswagen's fraudulent representations regarding the Defeat-Device Vehicles. Among other things, each of Plaintiffs and the other Class members relied on Volkswagen's representation that the Defeat-Device Vehicles met federal and Maine emissions requirements and were thus legally bought, sold and driven in Maine and other states. Had Plaintiffs and the other Class members known that the Defeat-Device Vehicles failed to comply with federal and Maine law, they would not have purchased or leased the Defeat-Device Vehicles.

68. Any applicable statute of limitations was tolled until September 18, 2015, the date upon which the EPA issued the NOV, by virtue of Volkswagen's intentional concealment of the defeat devices and its misrepresentations regarding the Defeat-Device Vehicles' emissions, fuel efficiency and performance. Plaintiffs and the other Class members could not have discovered Volkswagen's fraudulent concealment and misrepresentations through the exercise of reasonable diligence.

69. Plaintiff and Class members have sustained damage because of Volkswagen's fraudulent concealment. Such damages include, but are not limited to, past and future out of pocket costs and diminution of value of the Defeat-Device Vehicles.

70. The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme and the resulting harm to the Volkswagen brand, which has and will make any reasonable consumer reluctant to purchase any of the Defeat-Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

71. Accordingly, Volkswagen is liable to Plaintiffs and the Class members for damages in an amount to be proven at trial.

72. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## BREACH OF CONTRACT

73. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

74. Plaintiff brings this Count on behalf of the Class.

75. Plaintiffs and the Class members entered into a written contract with Volkswagen to purchase or lease a Defeat-Device Vehicle. Such contracts included an express warranty issued by Volkswagen. By its terms, the express warranties covered both the original purchaser of a Defeat-Device Vehicle and any subsequent purchaser of a Defeat-Device Vehicle.

76. The express warranty provides that Volkswagen warrants the emission control system for each of the Defeat-Device Vehicles, covering various aspects of the emissions system for as much as 8 years or 80,000 miles (whichever comes first).

77. Volkswagen breached the contracts, including the express warranty, it made with Plaintiffs and the other Class members by selling or leasing Plaintiff and the Class members vehicles which have defective emission control systems and by misrepresenting or failing to disclose the existence of the "defeat device."

78. Any applicable statute of limitations was tolled until September 18, 2015, the date upon which the EPA issued the NOV, by virtue of Volkswagen's intentional concealment of the defeat devices and its misrepresentations regarding the Defeat-Device Vehicles' emissions, fuel

efficiency and performance. Plaintiffs and the other Class members could not have discovered Volkswagen's breach of contract, or its concealment and misrepresentations, through the exercise of reasonable diligence.

79. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Maine class have been damaged in an amount to be proven at trial.

## NOTICE PURSUANT TO 5 M.R.S.A. § 213

80. Plaintiffs hereby provide Volkswagen with notice and demand that within thirty (30) days, Volkswagen correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Volkswagen's failure to do so will result in Plaintiffs amending this Complaint to seek, pursuant to 5 M.R.S.A. § 213, on behalf of themselves and those similarly situated Class members, compensatory damages and punitive damages due to Volkswagen's knowing and intentional unfair and deceptive practices.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Maine class, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A. Certification of the proposed Maine class, including appointment of Plaintiffs' counsel as Class Counsel;

B. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a recall or free replacement program;

D. Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

  E. An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

  F. An award of costs and attorneys' fees; and

  G. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: September 24, 2015

        Respectfully submitted,

        SEAN MAHONEY and AYRES STOCKLY

        By their attorneys,

        */s/ Timothy R. Shannon*
        Timothy R. Shannon

        */s/ Thomas C. Newman*
        Thomas C. Newman

        *s/ Rachel M. Wertheimer*
        Rachel M. Wertheimer

        VERRILL DANA, LLP
        One Portland Square
        P.O. Box 586
        Portland, Maine 04112-0586
        (207) 774-4000
        tshannon@verrilldana.com
        tnewman@verrilldana.com
        rwertheimer@verrilldana.com